CHOI & ITO
Attorneys at Law

CHUCK C. CHOI
ALLISON A. ITO
700 Bishop Street, Suite 1107
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Fax: (808) 566-6900
Email: cchoi@hibklaw.com; aito@hibklaw.com

Proposed Attorneys for Debtor
and Debtor-in-Possession

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| In re | BK. NO. 19-01083 |
| --- | --- |
| IBIS NETWORKS, INC.<br>a Delaware corporation,<br><br>　　　　Debtor and<br>　　　　Debtor-in-Possession. | (Chapter 11)<br><br>MOTION FOR ORDER AUTHORIZING DEBTOR TO PAY PRE-PETITION WAGES AND OTHER EMPLOYMENT-RELATED COSTS AND EXPENSES AND TO HONOR PRE-PETITION EMPLOYEE BENEFITS; EXHIBIT A<br><br>HEARING<br>DATE:　[TO BE SET]<br>TIME:　[TO BE SET]<br>JUDGE: The Hon. Robert J. Faris |

## MOTION FOR ORDER AUTHORIZING DEBTOR TO PAY PRE-PETITION WAGES AND OTHER EMPLOYMENT-RELATED COSTS AND EXPENSES AND HONOR PRE-PETITION EMPLOYEE BENEFITS

IBIS NETWORKS,INC., a Delaware corporation, debtor and debtor-in-possession ("Debtor" or "Company"), hereby moves this Court for the entry of an order authorizing the Debtor in the regular course of the Debtor's business and in the Debtor's business discretion, to: (i) pay all accrued but unpaid employment-related costs and expenses for current employees and independent contractors, that arose pre-petition, including without limitation pre-petition wages, salaries, compensation, gratuities, payroll taxes, payroll deductions and required contributions, health and welfare payments including health insurance, life, disability and other insurance for employees, all obligations related to employee health plans, such as medical, dental, and other related benefits, contributions to any pension, profit-sharing or retirement plans, and reimbursable employee expenses (hereinafter collectively referred to as the "Pre-Petition Employment Expenses"), and to honor any outstanding checks for such Pre-Petition Employment Expenses; (ii) to honor all pre-petition employee benefits, and (iii) grant such other and further relief as the Court deems just and proper.

This Motion is brought pursuant to 11 U.S.C. §§ 105, 507(a)(4), 507(a)(5), 1106, and 1107(a), and is based upon the attached Memorandum in Support, the Declaration of Sivapriya Vijayakumar in Support of First Day Motions filed

1

concurrently herewith, by the record in this case, and by such other evidence and argument as counsel may present before or at the hearing on the Motion. Nothing in this Motion shall be deemed a request for authority to assume, and nothing in this Motion shall be deemed an authorization to assume any executory contract or unexpired lease under Section 365 of the Bankruptcy Code 11 U.S.C. § 365.

In support of the Motion, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter, pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper before the Court, pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This Motion is made pursuant to 11 U.S.C. § § 105, 507, 1106 and 1102.

## BACKGROUND

4. The Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code on August 27, 2019.

5. The Debtor continues to operate its business pursuant to 11 U.S.C. § 1107 and 1108.

6. The Declaration of Sivapriya Vijayakumar in Support of First Day Motions ("Vijayakumar Declaration") filed contemporaneously herein is

incorporated herein by reference. Defined terms herein have the meaning set forth in the Vijayakumar Declaration.

7. The Debtor is an energy management and data analytics company focused on commercial applications. The Debtor developed technology for a "plug load management system" and is a full stack (or full service) company, meaning that not only does it develop the technology, but also sells the complete product, and provides customer service and operational expertise.

8. The Debtor's "smart" electrical sockets are installed in existing electrical outlets, and companion software licenses (renewable annually) permits customers to, amongst other things, give the customer real time data (such as erratic or excessive energy use which often precedes device failure, alerts when equipment is on or off when it should not be) and control over the electrical equipment (such as power down equipment when the office is empty).

9. The Debtor has approximately 12 institutional customers.

10. The Debtor has eight (8) salaried employees and one (1) independent contractor (on an hourly as-needed basis) as of the commencement of this case. Five (5) employees are based in Honolulu, one (1) employee is located in Washington state, and two (2) employees and the independent contractor are located in California.

11. The employees and independent contractors are paid using different rates of pay depending on job responsibilities and years of service.

12. Employees are paid semi-monthly, with payroll disbursements made on the 1st day and the 15th day of the month. ProService Hawaii provides payroll services to the Debtor. For each payroll period, ProService Hawaii charges approximately $681.00 (which number is based, in part, on the number of employees and each employee's salary). The independent contractor is paid directly by the Debtor.

13. The next regularly scheduled pay date is August 30, 2019, for the period covering from August 16, 2019, through August 31, 2019.

14. As of the Petition Date, employees and independent contractor have accrued and unpaid compensation for the current pay period.

15. Attached hereto as <u>Exhibit A</u> is a copy of the gross pay for the period ending August 15, 2019 received by the Debtor's employees (who are employees as of the Petition Date). Since the net pay does not change much from pay period to pay period, this should be sufficient to provide the Court and creditors with notice of the amounts involved per employee in the event the requested relief is granted.

16. The complete payroll ledger for the current pay period is not attached because the report contains confidential information, including social security

numbers, garnishments, rates of pay for employees, charitable contribution deductions and 401k deductions. Further, the report would be a projection only, and would not be any more accurate than the list attached as Exhibit "A."

17. The Debtor estimates that each employee will receive up to $6,250.00 in gross pay. No employee or independent contractor will receive more than $13,650.00 in pre-petition compensation. For the period ending August 15, 2019, the typical employee received between $2,916.67 through $7,833.49,[1] and as per the attached listing, the highest employee gross pay of the Debtor's employees (who remained employed by the Debtor as of the Petition Date) is $6,250.00.

18. With regard to employee benefits, such as medical, dental, and vision, it is unclear what impact the bankruptcy will have, but in any event the Debtor seeks authority to keep all such benefits in place and uninterrupted. As shown below, in some instances these benefits will constitute Pre-Petition claims. In other instances the benefits have been pre-paid and nothing is due. In other instances the benefits will accrue Post-Petition. To the extent relief is needed to maintain these benefits, including payment of any Pre-Petition claims for said benefit payments, such relief is requested so that all employees are left with a sense that they are being treated equally. The figures per employee are de minimis.

19. The Company's employees are covered by HMSA for health, vision,

---

[1] Prior to the Petition Date, the individual receiving $7,833.49 in gross pay ceased to be employed by the Debtor.

and other supplemental coverage. The Company's employees are covered by HDS for dental. The payments to HMSA and HDS are paid each calendar month in arrears. To the extent relief is needed to maintain these benefits, Debtor seeks authority to pay any pre-petition claims for said benefit payments.

20. Certain benefits that the Debtor offers its employees are by payroll deductions as employee contributions. In such cases, the Debtor makes deductions from the employee's payroll check and pays the deducted amounts along with the required employer contributions to third parties. The Debtor must make deductions from the employee payroll for medical contributions, state and federal tax withholding, charitable donations and garnishments. The Debtor requests authority to pay over to the appropriate third parties all such funds in accordance with existing company policies and practices, as well as state and federal laws. The figures per employee are de minimis.

21. The total amount proposed to be paid to each employee and the independent contractor in pre- petition wages and benefits is less than the priority cap of $13,650 under 11 U.S.C. §507(a)(4) and $12,475 under 11 U.S.C. §507(a)(5).

## RELIEF REQUESTED

22. The Debtor is seeking to minimize any disruption to the normal course of operations at the Company caused by the bankruptcy proceeding. Any

disruption of the Debtor's ordinary operations could impact its ability to supply product and services to customers, which could lead to a loss of business, which in turn could jeopardize the Debtor's ability to reorganize.

23. By this Motion, the Debtor is seeking in the regular course of the Debtor's businesses and in the Debtor's business discretion (i) authority to pay current employees and independent contractors all accrued but unpaid employment-related costs and expenses that arose pre-petition, including without limitation pre-petition wages, salaries, gratuities, payroll taxes, payroll deductions and required contributions, union dues, health and welfare payments including health insurance, life, disability and other insurance for employees, all obligations related to employee health plans, such as medical, dental, and other related benefits, contributions to any pension, profit-sharing or retirement plans, and reimbursable employee expenses, and to honor any outstanding pre-petition checks for wages (hereinafter collectively referred to as the Pre-Petition Employment Expenses"), and to honor outstanding checks for such Pre-Petition Employment Expenses, and (ii) authority to honor all pre-petition employee benefits, and (iii) such other and further relief as the Court deems just and proper under the circumstances of this case.

24. The Debtor would like to see all of the Company's employees and independent contractor paid, and all of their benefits honored, because their morale

7

U.S. Bankruptcy Court - Hawaii    #19-01083    Dkt # 6    Filed 08/27/19    Page 8 of 17

is critical to preserving the goodwill of the Company, which in turn is critical to preserving the going concern value of the Company.

## NEED FOR THE REQUESTED RELIEF

25. Energy efficiency technology requires a high level of technical expertise. The Debtor's employees and independent contractor have developed special expertise which would be difficult to replace if the employees and independent contractor were to leave due to the Debtor's failure to honor its obligations to its employees and independent contractor.

26. If employees and the independent contractor are denied compensation or benefits, employees and the independent contractor would likely suffer personal hardship and may not come back to work.

27. The Debtor submits that, without the Debtor's experienced employees and independent contractor, the Debtor will not be able to continue operations, thereby resulting in immediate and irreparable harm to the Company and to the Debtor's creditors.

28. The Debtor also submits that the total amount to be paid to the employees and independent contractor is reasonable compared with the importance and necessity of preserving the morale of the employees and independent contractor and the goodwill of the Debtor, and de minimis compared to the harm likely to be caused by any disruption in Debtor operations.

8

## LEGAL AUTHORITY TO ORDER THE REQUESTED RELIEF

29. It appears the wages and the like owed the employees and the independent contractor, as well as the benefits due the employees, will encompass both pre and post petition obligations. The claims also fall under the provisions of Sections 507(a)(4) and 507(a)(5) of the Bankruptcy code pertaining to pre-petition claims for wages and benefits.

30. Section 105(a) of the Bankruptcy Code provides that "(t)he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The purpose of Section 105(a) is "to enable the court to do whatever is necessary to aid in its jurisdiction, i.e., in anything arising in or relating to a bankruptcy case." 2 <u>Collier on Bankruptcy</u> ¶ 105.02 (15th ed. 1990). Essentially, 11 U.S.C. § 105(a) codifies the bankruptcy court's inherent equitable powers. <u>In re Feit & Drexler, Inc.</u>, 760 F.2d 406 (2d Cir. 1985).

31. In a long line of well-established cases under Section 105(a), courts consistently have authorized debtor to pay certain creditors' pre-petition claims where necessary or appropriate to preserve or enhance the value of the debtor's estate for all creditors. <u>See</u> <u>e.g.</u>, <u>Miltenberger v. Logansport Railway</u>, 106 U.S. 286 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of . . . (crucial) business relations . . . ."); <u>Gregg v. Metropolitan</u>

9

Trust Co., 197 U.S. 183 (1905) ("[T]he payment of the employees of the (rail)road is more certain to be necessary in order to keep it running than payment of any other class of previously incurred debt"); In re Chateaugay Corp., 80 B.R. 279 (Bankr. S.D.N.Y. 1987), appeal dism'd, 838 F.2d 59 (2d Cir. 1988) (approving lower court order authorizing debtor prior to plan stage of case to pay pre-petition wages, salaries, business expenses and benefits); In re Ionosphere Clubs, Inc., 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989) (payment of all pre-petition wages, salaries, reimbursable business expenses and health benefits beyond the [then] $2,000 maximum set by 11 U.S.C. § 507(a)(3) to current employees of debtor airline authorized); In re Gulf Air, Inc., d/b/a TransOcean Airways, Inc., 112 B.R. 152, 153 (Bankr. W.D. La. 1989) (authorizing payment of pre-petition wages, benefits and expenses permitted to "safeguard against loss of going-concern values"); In re Biggs, Inc., 159 B.R. 737, 738 (Bankr. W.D. Pa. 1993) (authorizing payment of $1.5 million from proceeds of inventory sale to pre-petition wage claims where payment was "necessary to avert a serious threat to the chapter "process"); In re Corcoran, 2010 WL 5207589 (Bankr. D. Haw. 2010) (Bk. NO. 10-00741) (independent contractors can assert claims for wages, salaries or commissions under 11 U.S.C. § 507(a)(4)).

32. The amounts that the Debtor seeks authority to pay would be accorded priority under Section 507(a)(4) of the Bankruptcy Code. Under the

circumstances, the Court should, under section 105(a) of the Bankruptcy Code, authorize the Debtor to pay these pre-petition obligations in the ordinary course of its business.

33.     By paying the wage claims of employees and independent contractor arising pre-petition, and by honoring the benefits earned or accrued pre-petition, the Debtor will incur a nominal cost to get a substantial benefit, avoiding irreparable damage to the goodwill of the Debtor, preserving the going concern value of the Debtor, and increasing the likelihood for a successful reorganization.

34.     In <u>CEI Roofing</u>, the court found that pursuant to 11 U.S.C. §1107(a), a debtor in possession is under an implied duty to "protect and preserve the estate, including an operating business' going-concern value," *quoting* <u>In re CoServ, L.L.C.</u>, 273 B.R. 487, 497 (Bankr. N.D.Tex. 2002), and that where appropriate the debtor could move under 11 U.S.C. §105 to obtain such protection. In authorizing the debtor in possession to pay priority employee wage and benefit claims in advance of order confirming a Chapter 11 plan, the court in <u>CEI Roofing</u> found its job made easier because the relief sought was clearly consistent with other provisions of the Code:

> Because Congress has specifically provided that prepetition wage claims up to a certain amount per claim be elevated to priority status under § 503(1)(3)[*sic*; the former 507(a)(3)], this Court's job is a little easier than in the critical vendor cases and it need not search for implied authorization in the Code to pay such claims ahead of the general unsecured claims.

11

In re CEI Roofing, Inc., supra, 315 B.R. at 59-60.

In explaining the rationale of its holding, the court in CEI Roofing stated:

> Thus, there has evolved a rule for the payment of prepetition wages and benefits which is <u>based on both common sense and the express provisions of the Bankruptcy Code. If employees are not paid, they will leave. If they leave the Debtor's business, the bankruptcy case fails shortly after the filing. No one will benefit from the process. The Code gives employees a statutory priority that elevates the claims above the general unsecured claims, and, in fact, most claims in the bankruptcy case</u>. To the extent that the existing holders of claims of higher priority than the wage claims consent or do not timely object, such priority claims may be made during the pendency of the bankruptcy case. <u>The treatment and payment of such claims before confirmation does no violence to the Code or existing case law in this circuit. In fact, such orders are usually "necessary" and "appropriate" to implement a debtor's reorganization under Chapter 11</u>.
>
> In this case, the debtors-in-possession, with the consent of their secured creditor and professionals of the estate, seek authority to pay the priority wage claims of their employees. Considering the consent of the parties and for the reasons set forth above, the Court finds that it has the authority pursuant to § 105 and § 507(a)(3) and (4) to authorize the payment of priority wage claims and employee benefits prior to the confirmation of a plan.

In re CEI Roofing, Inc., supra, 315 B.R. at 61; emphasis added.[2]

    35.    In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D.Tex. 2002), the court interpreted 11 U.S.C. § 105 and 1106 together to empower a debtor in possession to act, finding that "[a] debtor in possession, like a trustee, is a fiduciary

---

[2] After the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, or "BAPCPA.," Sections 503(a)(3) and (a)(4) of the Code were renumbered, and are now sections 503 (a)(4) and (a)(5).

12

holding the bankruptcy estate and operating the business for the benefit of its creditors," and finding that "[i]mplicit in the duties of a Chapter 11 trustee or a debtor in possession as set out in Sections 1106 and 704 of the Bankruptcy Code is the duty of such a fiduciary to protect and preserve the estate, including an operating business's going-concern value."

36. Relatively recently, this Court has granted similar relief to other Chapter 11 debtors. See, e.g., In re The Honolulu Medical Group, Inc., Bk. No. 09-02566; In re Pomare, Ltd., Bk. No. 08-01448; In re Azabu Buildings Company, Ltd., Bk. No. 05-50011, (Bankr. D.Haw. 2005); In re Andre Tatibouet, Bk. No. 05-00829, (Bankr. D.Haw. 2005); In re Hawaii Outdoor Tours, Bk. No. 12-02279 (Bankr. D. Haw. 2012); In re 1250 Oceanside Partners, Bk. No. 13-00353 (Bankr. D. Haw. 2013); In re Pomare, Ltd., Bk. No. 15-00203 (Bankr. D. Haw. 2015); In re Hawaiian Springs, LLC, Bk. No. 17-001348 (Bankr. D. Haw. 2017); In re The Filipino Community Center, Inc., Bk. No. 18-00109 (Bankr. D. Haw. 2018); In re The Minesen Company, Bk. No. 19-00849 (Bankr. D. Haw. 2019).

## CONCLUSION

Based upon the foregoing points and authorities, the Debtor respectfully requests that the Court grant the instant Motion, and enter an order authorizing the Debtor, in the regular course of the Debtor's business and in the Debtor's business discretion, to pay pre-petition wages and other employment-related costs and

13

U.S. Bankruptcy Court - Hawaii   #19-01083   Dkt # 6   Filed 08/27/19   Page 14 of 17

expenses and to honor pre-petition employee benefits, as described above, and grant such other and further relief as the Court deems just and proper.

DATED: Honolulu, Hawaii, August 27, 2019.

/s/ Allison A. Ito
CHUCK C. CHOI
ALLISON A. ITO
Proposed Attorneys for
Debtor and Debtor-in-Possession

# EXHIBIT A

U.S. Bankruptcy Court - Hawaii   #19-01083   Dkt # 6   Filed  08/27/19   Page 16 of 17

| Employee | Gross Wages |
|---|---|
| Sivapriya Vijayakumar | $ 6,250.00 |
| Mark Madsen | $ 6,250.00 |
| Jim Hagerman | $ 5,208.33 |
| Dale Uno | $ 3,333.33 |
| Robert Kiessling | $ 3,750.00 |
| Jeffrey Tamashiro | $ 2,916.67 |
| Grant China | $ 4,375.00 |
| Eoin O'Halloran | $ 3,125.00 |