CHOI & ITO
Attorneys at Law

CHUCK C. CHOI
ALLISON A. ITO
700 Bishop Street, Suite 1107
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Fax: (808) 566-6900
Email: cchoi@hibklaw.com; aito@hibklaw.com

Proposed Attorneys for Debtor
and Debtor-in-Possession

## IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>IBIS NETWORKS, INC.,<br><br>       Debtor and<br>       Debtor-in-Possession. | BK. NO. 19-01083<br>(Chapter 11)<br><br>MOTION FOR ORDER AUTHORIZING DEBTOR TO (I) OBTAIN POSTPETITION SECURED INDEBTEDNESS; (II) GRANT SECURITY INTERESTS AND SUPERPRIORITY CLAIMS PURSUANT TO SECTIONS 364(C) OF THE BANKRUPTCY CODE; (III) USE CASH COLLATERAL, AND (IV) TO SCHEDULE A FINAL HEARING; EXHIBITS "A"- "D"<br><br>DATE:   [To be assigned]<br>TIME:    [To be assigned]<br>JUDGE: The Hon. Robert J. Faris |

**MOTION FOR ORDER AUTHORIZING DEBTOR TO: (I) OBTAIN
POSTPETITION SECURED INDEBTEDNESS; (II) GRANT SECURITY
INTERESTS AND SUPERPRIORITY CLAIMS PURSUANT TO SECTIONS
364(C) AND (D); (III) USE CASH COLLATERAL AND
(IV) TO SCHEDULE A FINAL HEARING; EXHIBITS "A" - "D"**

IBIS NETWORKS, INC. (the "Debtor"), as debtor and debtor in possession,

respectfully represents:

1.      The Debtor has an urgent and immediate need for cash to continue to

operate a fullstack, energy management and data analytics company.  The Debtor

owns the intellectual property to "smart socket" technology: it markets

"InteliSockets" to commercial end-users, and provides software licenses to its

customers so that the customer can control sockets, receive real-time notifications

(such as erratic or excessive energy use which often precedes device failure, alerts

when equipment is on or off when it should not be), and analyze energy usage.

The Debtor does not have sufficient funds with which to operate its operations on

an ongoing basis.  Absent authority to obtain post-petition secured credit and

utilize cash collateral of Bank of Hawaii, on an interim basis pending a final

hearing on this motion (the "Motion"), the Debtor will be immediately and

irreparably harmed.  The availability of interim loans under the DIP Facility (as

defined below) will provide the Debtor with the liquidity necessary to operate

pending a final hearing, and will further provide necessary assurance to the

U.S. Bankruptcy Court - Hawaii   #19-01083   Dkt # 7   Filed  08/27/19   Page 2 of 29

Debtor's vendors, employees and customers of the Debtor's ability to meet its near-term obligations.

2. By this Motion, the Debtor requests entry of interim and final orders granting (i) authority to obtain postpetition financing pursuant to sections 364(c)(1), 364(c)(2), 364(c)(3), and 507 of the Bankruptcy Code, (ii) approval to use cash collateral pursuant to section 363 of the Bankruptcy Code to pay operating expenses for the budget period (through December 2019) not to exceed 110% of the expenses each period (on an aggregate and cumulative basis) as set forth in the budget attached hereto as Exhibit "B", (iii) ) authority to grant Replacement Liens (as defined below) to the prepetition Secured Lender pursuant to sections 361, 363(e), 364(c), and 507 of the Bankruptcy Code to the Prepetition Lender, and (iv) related relief.

3. The Debtor requests authority to obtain secured, first priority (with respect to the Debtor's patent) and second-priority (with respect to the Debtor's personal property), postpetition financing up to an aggregate principal amount of up to $1,500,000 (the "DIP Facility"), from LALIMA ENTERPRISES LLC, a Hawaii limited liability company (the "DIP Lender"), pursuant to the terms of a Loan Agreement to be finalized and filed hereafter, and the security and other documents to be executed in connection therewith. A copy of the proposed term

2

sheet setting forth the material terms and conditions of the DIP Credit Agreement (the "DIP Term Sheet") is attached hereto as <u>Exhibit A</u>.

4.      Furthermore, on an interim basis, the amounts to be advanced under the DIP Facility will be limited to those necessary expenses, reflected on the Budget a draft of which is attached hereto as <u>Exhibit B</u>, needed to fund the Debtor's operations through the final hearing on the DIP Facility (the "Final Hearing"). Specifically, pending the entry of the final DIP order (the "Final DIP Order" and, together with the Interim DIP Order, the "DIP Orders"), the Debtor requests that the Court authorize the Debtor, on an interim basis, (i) to borrow up to $250,000 under the DIP Facility, (ii) to use cash collateral for continued business operations, (iii) to grant to the DIP Lender the liens in the attached term sheet (Exhibit A), (iv) to provide the Replacement Liens in favor of the prepetition Secured Lender (as defined below), (v) approve the adequacy of the proposed service thereof, and (vi) schedule the Final Hearing.

**<u>JURISDICTION</u>**

5.      This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

U.S. Bankruptcy Court - Hawaii   #19-01083   Dkt # 7   Filed  08/27/19   Page 4 of 29

# I.    BACKGROUND

6.    On August 26, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to operate its business and manage its properties, affairs and assets as a debtor-in-possession.

7.    The Debtor is a six-year old company. It markets and sells InteliSockets over the internet.

8.    Through a series of offerings from 2013 through 2018, the Debtor has raised approximately $6.4 million in capital from approximately 42 equity owners. Approximately $2 million of the $6.4 million was raised in 2018. Approximately $898,000 was from the Pappas Trust.

9.    The InteliSockets went to market in 2015.

10.    As a start-up, the Debtor has historically operated at a loss.  For example, in 2019 (through July 31, 2019), the Debtor's gross revenues totaled approximately $260,000, and is reporting a net loss of approximately $1 million.

11.    The Debtor has a primary office in Honolulu, pursuant to a lease (as amended, the "Office Lease") dated December 9, 2015 with Davies Pacific, LLC.

12.    As of the Petition Date, the Debtor's secured creditor is Bank of Hawaii ("BOH" or "Secured Lender") which has loaned approximately $750,000

U.S. Bankruptcy Court - Hawaii   #19-01083   Dkt # 7   Filed  08/27/19   Page 5 of 29

pursuant to a revolving line of credit. On April 1, 2016, BOH extended a line of credit to the Debtor in an original principal amount up to $500,000, and subsequently increased from $500,000 to $750,000 (the "BOH Loan") pursuant to a Change in Terms agreement dated March 28, 2017. James J. Pappas trustee of the James. J. Pappas Trust dated April 11, 1988 is a co-borrower for the BOH Loan and James J. Pappas, individually, guaranteed the BOH Loan. BOH has a blanket lien on substantially all of the Debtor's assets pursuant to a UCC Financing Statement filed with the Delaware Secretary of State ("DE SOS") on April 6, 2016 as Document No. 20161994365, to secure the commercial line of credit with a current outstanding balance of approximately $753,417.10 as of August 4, 2019.

13.     The *Financing Statement and Lien Report* (the "UCC-HI Report") issued by Title Guaranty of Hawaii, Inc. (and dated August 15, 2019) indicates no liens against the Debtor's property. A true and correct copy of the UCC-HI Report and the lien identified therein are attached hereto as Exhibit "C". The *UCC Debtor Search* (the "UCC-DE Report") issued by Corporation Service Company indicates that there is one (1) financing statement in favor of Senior Lender. A copy of the UCC-DE Report and the filing identified therein are attached hereto as Exhibit "D".

14.     The DIP Lender's ultimate owner, James J. Pappas (through his trust) has also loaned to the Debtor $850,000.00 prepetition on an unsecured basis. Mr.

5

Pappas, individually, guaranteed the BOH Loan and his trust is a co-borrower on the BOH Loan. In 2018, Mr. Pappas (through his trust) also invested approximately $2 million in the Debtor via convertible notes.

15.     The Secured Lender (BOH) and the Unsecured Lender (James J. Pappas Trust) are hereafter referred to as the "Prepetition Lenders".

16.     None of the liens or security interests to be granted to the DIP Lender will prime any valid, enforceable and binding liens or security interests of the Prepetition Lenders on the assets of the Debtor existing as of the Petition Date.

## II.    DEBTORS' PROPOSED POSTPETITION FINANCING ARRANGEMENT

### A.    NEED FOR POSTPETITION FINANCING

17.     The Debtor lacks adequate liquidity primarily because sales have not generated sufficient revenue to pay operating expenses.

18.     As a consequence, the Debtor has had to rely on funding from other sources to cover these operating losses. The Prepetition Lenders provided much of the funds to cover the Debtor's operating losses. The Debtor is projected to continue to incur operating losses for at least the first few months of this proceeding as set forth in the Budget. Consequently, the Debtor urgently requires capital to its operations during this time.

### B.    THE DIP FACILITY

6

19. The significant terms of the DIP Term Sheet are as follows:[1]

   (a) <u>Borrower.</u>  IBIS NETWORKS, INC.

   (b) <u>DIP Lender:</u>  LALIMA ENTERPRISES LLC, a Hawaii limited liability company

   (c) <u>Commitment:</u> The maximum loan amount under the DIP Credit Facility shall be $1,500,000.

   (d) <u>Interest Rates:</u>  Simple interest on the outstanding balance of the DIP Credit Facility shall accrue at the rate of 15% per annum. Interest will accrue and will be payable at maturity or on the Termination Date. Interest will not otherwise be paid prior to these dates.

   (e) <u>Default Interest:</u> Upon any default under the DIP Credit Facility, interest shall accrue at the rate of 18% per annum.

   (f) <u>Use of Proceeds.</u>  The DIP Credit Facility shall be used to pay administrative expenses of the Chapter 11 Case, including, but not limited to, payment for maintenance and preservation of the property of the Debtor's estate, salaries, rent, insurance, utility services, operating expenses and court-approved professional fees and as such pre-petition expenses as may be approved by the Bankruptcy Court, provided, however, that not less than $100,000 shall be "carved out" and set aside for professionals' fees ("Carve Out") as may be approved by the Bankruptcy Court, and as set forth in the budget approved by the Lender.

   (g) <u>Security:</u> The DIP Credit Facility shall have (i) super-priority pursuant to 11 U.S.C. § 364(c)(1) and shall have priority over administrative expenses of the kind specified in 11 U.S.C. §§ 503(b), 507(a), 507(b) and 726, (ii) a security interest in the Debtor's federal patent(s) and trademark(s), and (iii) a junior lien (subordinate to pre-petition secured lenders) pursuant to 11 U.S.C. § 364(c)(3) on the Debtor's personal property; provided,

---

[1] This summary is qualified in its entirety by reference to the provisions of the DIP Term Sheet. Capitalized terms in this summary not otherwise defined herein shall have the meanings ascribed to such terms in the DIP Term Sheet.

7

however, that Lender's priority shall be subject to the Carve Out.

(h) <u>Immediate Effect</u>:  The DIP Liens in favor of the DIP Lender in the Collateral shall be effective immediately upon the entry of the interim order and subject and subordinate only to the liens and security interests of the Senior Lender and the Carve-Out (defined below).

(i) <u>Carve Out</u>:  The Carve-Out shall mean the sum of not less than $100,000.00 for professionals' fees.

(j) <u>Fees and Expenses</u>: The Debtor shall pay reasonable fees and expenses associated with the DIP Facility, including, but not limited to the Lender's out-of- pocket expenses associated with the transaction, professional fees, recording fees, search fees, and filing fees.

(k) <u>Events of Default</u>. including, without limitation: (a) failure to pay principal, interest, fees and expenses when due; (b) violation of covenants; (c) change of control; (d) dismissal or conversion of the Chapter 11 Case; (e) appointment of a chapter 11 trustee in the Chapter 11 Case; (f) granting of relief from automatic stay to permit foreclosure on or exercise any other remedies with respect to any property of the Borrower; or (g) the plan of reorganization shall not have been approved by the Bankruptcy Court by January 31, 2020.

(l) <u>Maturity Date</u>. The DIP Credit Facility shall be due on or before the earlier of:  January 31, 2020, or confirmation of a Plan of Reorganization in the Debtor's Chapter 11 Case, unless terminated earlier pursuant to a "DIP Credit Facility Termination Event" as follows: (i) appointment of a Chapter 11 Trustee in the Chapter 11 Case; (ii) dismissal of the Chapter 11 Case; (iii) sale of substantially all of the Debtor's assets; or (iv) conversion of the Chapter 11 Case to one under Chapter 7 of the Bankruptcy Code.

(m) <u>Representations and Warranties</u>. Usual and customary for facilities of this nature, including the following: (i) organization, qualification and due authorization of the Debtor;

8

(ii) no undisclosed litigation; (iii) no breach of law or regulations; (iv) all necessary third party consents have been obtained.

    (n)    <u>Covenants</u>. Usual and customary for facilities of this nature, including the following: (a) organization, qualification and due authorization of the Borrower; (b) no undisclosed litigation; (c) no breach of laws or regulations; (d) all necessary third party consents have been obtained.

20.     The Debtor and the DIP Lender have tentatively agreed upon an interim budget (the "Budget"), which is attached as <u>Exhibit B</u>, projecting operations for four months. The Debtor believes that the Budget is achievable and the DIP Facility will allow the Debtor to pay administrative expenses through the Final Hearing.

    C.    **USE OF CASH COLLATERAL AND PREPETITION SECURED LENDER REPLACEMENT LIENS**

21.     In order to address its working capital needs and fund its reorganization efforts, the Debtor also requires the use of cash collateral of the Secured Lender (the "Cash Collateral"). The use of Cash Collateral will provide the Debtor with the additional necessary capital with which to pay expenses, and maximize value.

22.     The Debtor requests authority to use the Cash Collateral to pay the reasonable and ordinary expenses of operating its business, including, without limitation, payroll and benefit expenses, payroll taxes, federal and state taxes, inventory, supplies and equipment, advertising, utility services, insurance,

9

subcontractors, vendor and supplier services, and other expenditures as are necessary for operating its business and preserving its going concern value.

23.    The Debtor's authority to use Cash Collateral shall be limited to payment of not more than 110% of the expenses each period (on an aggregate and cumulative basis), as set forth in the Budget unless otherwise agreed by the Secured Lender; provided, however, that the Debtor is not limited by line item with respect to actual expenses.

24.    With respect to the Secured Lender, the Debtor proposes to provide adequate protection for the Debtor's use of Cash Collateral existing as of the Petition Date (the "Pre-Petition Collateral") actually used by the Debtor, by providing the Secured Lender with a replacement lien on all post-petition Cash Collateral and all proceeds of said collateral having the same validity, priority and extent as the Secured Lender's existing security interest in its Pre-Petition Collateral.  The Debtor is not seeking to prime the Secured Lender.

25.    For any diminution in the value of the Secured Lender's prepetition collateral (the "Prepetition Collateral") from and after the Petition Date of the Prepetition Collateral (including the Cash Collateral), from and after the Debtor's Petition Date, the Secured Lender, shall be granted:

> (a)    replacement liens (the "Replacement Liens") in the estate's post-petition assets, and the proceeds thereof (the "Replacement Collateral"), to the same extent and priority as any lien held by the Secured Lender in the Pre-Petition Collateral as of the

10

Petition Date, limited to the amount of Pre-Petition Collateral as of the Petition Date. The Replacement Liens would thus be granted with the same validity and priority and to the same extent and as Secured Lender's prepetition liens, and would be subject to the same rights and challenges by or on behalf of the Debtor. The amount secured by the Replacements Liens shall be equal to any actual net diminution of Secured Lender's Cash Collateral due to the Debtor's use thereof. The Replacement Liens shall be valid, perfected and enforceable against the Replacement Collateral without further filing or recording of any document or instrument or the taking of any further action. However, the Replacement Liens shall be subject to and subordinate to the fees and expenses of a Chapter 7 trustee, if one is appointed, but not including the expenses of the Chapter 7 trustee's professionals.

26.     The Secured Lender Replacement Liens shall have the same validity, extent and priority as the liens that the Secured Lender possessed on the Petition Date. The foregoing claims are to be granted to the Secured Lender because, among other things, the Debtor will continue to use the Cash Collateral and other collateral which secure the claims and obligations under the prepetition BOH secured loan. Such payments are also being made for the purpose of, among other things, protecting the Secured Lender's claims, obligations, and collateral interests from such use and the potential depreciation and deterioration of the Cash Collateral and other collateral as a result of such use.

## III.     THE DIP LOAN DOCUMENTS SHOULD BE AUTHORIZED

27.     Approval of the DIP Financing will provide the Debtor with immediate and ongoing access to borrowing availability to pay its current and ongoing operating

11

expenses. Unless these expenditures are made, the Debtor will be forced to cease operations, which could result in irreparable harm to the Debtor's going concern value. The credit provided under the DIP Facility and the use of Cash Collateral will enable the Debtor to continue to pay its expenses and operate in the ordinary course to preserve and enhance the value of its estate for the benefit of all parties in interest. The availability of credit under the DIP Loan Agreement will provide the Debtor's vendors, employees, and suppliers the confidence that will enable and encourage them to continue their credit and/or other relationships with the Debtor. Accordingly, the timely approval of the relief requested herein is imperative.

28.     Section 364(c) of the Bankruptcy Code provides, among other things, that if a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, the court may authorize the debtor to obtain credit or incur debt (a) with priority over any and all administrative expenses as specified in sections 503(b) or 507(b) of the Bankruptcy Code, (b) secured by a lien on property of the estate that is not otherwise subject to a lien, or (c) secured by a junior lien on property of the estate that is subject to a lien. 11 U.S.C. § 364. The Debtor proposes to obtain the financing set forth in the DIP Loan Agreement by providing, inter alia, superpriority claims, security interests, and liens pursuant to sections 364(c)(1) and (2), and (3) of the Bankruptcy Code.

U.S. Bankruptcy Court - Hawaii   #19-01083   Dkt # 7   Filed   08/27/19   Page 13 of 29

29.     The Debtor's liquidity needs can be satisfied only if the Debtor is authorized to borrow funds from the DIP Lender to fund its operations.  Due primarily to the Debtor's dismal operating history under prior management, the Debtor has been unable to procure sufficient financing in the form of unsecured credit allowable under section 503(b)(1), as an administrative expense under section 364(a) or (b), in exchange for the grant of a superpriority administrative expense claim pursuant to section 364(c)(1).  The Debtor has not been able to obtain postpetition financing proposals or other financial accommodations from any alternative prospective lender or group of lenders, much less on more favorable terms and conditions than those for which approval is sought herein. Among other advantages of this DIP Loan, the DIP Lender is not charging the typical up front deposit, plus administrative, unused line, and exit fees.  Nor does the DIP Lender require diligence.  Any other lender would ordinarily require substantial additional time for diligence, time that the Debtor simply cannot afford.

30.     Provided that a debtor's business judgment does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code, courts grant a debtor considerable deference in acting in accordance therewith. *See, e.g., In re Snowshoe Co.,* 789 F.2d at 1088; *In re Ames Dep't Stores, Inc.,* 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be

13

exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest"); *see also In re Curlew Valley Assocs., 14* B.R. 506, 513-14 (Bankr. D. Utah 1981); *In re Simasko Prod. Co.,* 47 B.R. 444, 449 (D. Colo. 1985).

31.     All of the Debtor's personal property assets are encumbered with the possible exception of its patent.  The Debtor submits that the circumstances of this case require that the Debtor obtain financing under section 364(c) of the Bankruptcy Code, and accordingly, the DIP Loan Agreement reflects the exercise of its sound business judgment.

32.     The terms and conditions of the DIP Loan Agreement are fair and reasonable.  Accordingly, the DIP Lender should be accorded the benefits of section 364(e) of the Bankruptcy Code.

## IV.    <u>THE USE OF CASH COLLATERAL SHOULD BE APPROVED</u>

33.     Under section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless "(a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and a hearing, authorizes such use in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). The Debtor requires the use of the Cash Collateral to fund its day-to-day operations. Indeed, absent such relief, the Debtor's operations will come to an immediate halt, with

14

damaging consequences for the Debtor, its estate and creditors. The interest of the Secured Lender in the Debtor's Cash Collateral will be protected by the Replacement Liens. Accordingly, the Debtor's request to use Cash Collateral in the operation of their business and administration of this bankruptcy case should be approved.

## V.   THE PROPOSED PREPETITION SECURED LENDER REPLACEMENT LIENS SHOULD BE AUTHORIZED

34.    Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used . . . or proposed to be used by a debtor in possession, the court . . . shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e). Section 361 of the Bankruptcy Code delineates the forms of adequate protection, which include periodic cash payments, additional liens, replacement liens and other forms of relief.  *See* 11 U.S.C. § 361.  What constitutes adequate protection must be decided on a case-by-case basis.  *See In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985).  The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use.  *See In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *Delbridge v. Production Credit Assoc. and Federal Land Bank*, 104 B.R. 824 (E.D. Mich. 1989); *In re Ledgemere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

15

35. The Replacement Liens will sufficiently protect the Secured Lender interest in the Prepetition Credit Agreement Collateral. Accordingly, the granting of the Replacement Liens is fair and reasonable and sufficient to satisfy the requirements of Bankruptcy Code sections 363(c)(2) and (e).

## VI. THE INTERIM APPROVAL SHOULD BE GRANTED TO AVOID IMMEDIATE AND IRREPARABLE HARM TO DEBTOR'S ESTATE

36. Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to use cash collateral or obtain credit, respectively, may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

37. Pursuant to Bankruptcy Rules 4001(b) and (c), the Debtor requests that the Court conduct an expedited preliminary hearing on this motion and (a) authorize the Debtor to use Cash Collateral and borrow up to $250,000.00 under the DIP Facility on an interim basis, pending entry of a final order, in order to (i) maintain and finance the ongoing operations of the Debtor, and (ii) avoid immediate and irreparable harm and prejudice to the Debtor's estates and all parties in interest and (b) schedule a hearing to consider entry of a final order.

U.S. Bankruptcy Court - Hawaii   #19-01083   Dkt # 7   Filed  08/27/19   Page 17 of 29

## VII. <u>CONCLUSION</u>

WHEREFORE, the Debtor respectfully requests entry of an order granting the relief requested herein and such other or further relief as is just.

DATED: Honolulu, Hawaii, August 27, 2019

<u>/s/ Allison A. Ito</u>
CHUCK C. CHOI
ALLISON A. ITO
Proposed Attorneys for
Debtor and Debtor-in-Possession

17

# EXHIBIT A

## LOAN TERM SHEET FOR $1,500,000.00 DIP CREDIT FACILITY

**Borrower:** Ibis Networks, Inc. ("Borrower" or "Debtor") as debtor-in-possession in a Chapter 11 Case in the United States Bankruptcy Court for the District of Hawaii ("Bankruptcy Court"), as case number 19-01083 ("Chapter 11 Case").

**Lender:** LALIMA ENTERPRISE LLC, a Hawaii limited liability company ("Lender").

**Loan Amount and Terms:** Maximum credit facility of up to $1,500,000.00 ("DIP Credit Facility") to be funded upon approval of the DIP Credit Facility by the Bankruptcy Court in accordance with the terms herein.

**Availability:** The DIP Credit Facility will be made available in two or more draws, subject to conditions set forth herein. Up to $250,000.00 shall be immediately available under the DIP Credit Facility upon entry of an interim order by the Bankruptcy Court approving the DIP Credit Facility, with the balance available upon entry of a final order.

**Use of Proceeds and Carve Out:** The DIP Credit Facility shall be used to pay administrative expenses of the Chapter 11 Case, including, but not limited to, payment for maintenance and preservation of the property of the Debtor's estate, salaries, rent, insurance, utility services, operating expenses and court-approved professional fees and as such pre-petition expenses as may be approved by the Bankruptcy Court, provided, however, that not less than $100,000 shall be "carved out" and set aside for professionals' fees ("Carve Out") as may be approved by the Bankruptcy Court, and as set forth in the budget approved by the Lender, provided, however, that no portion of the Carve Out may be used to investigate the validity, extent or priority of Lender's pre-petition secured loans in the total aggregate amount of approximately $1,000,000.00.

**Priority and Collateral:** The DIP Credit Facility shall have (i) super-priority pursuant to 11 U.S.C. § 364(c)(1) and shall have priority over administrative expenses of the kind specified in 11 U.S.C. §§ 503(b), 507(a), 507(b) and 726, (ii) a security interest in the Debtor's federal patent(s) and trademark(s), and (iii) a junior lien (subordinate to pre-petition secured lenders) pursuant to 11 U.S.C. § 364(c)(3) on the Debtor's personal property; provided, however, that Lender's priority shall be subject to the Carve Out.

**Conditions** Entry of an interim and final order which contains, among other terms, a finding that Lender is a "good faith" lender pursuant to 11 U.S.C. §

1

364(e),

| | |
|---|---|
| **Interest Rate:** | Simple interest at the rate of 15% per annum shall accrue. Default interest shall accrue at the rate of 18% per annum. |
| **Maturity:** | The DIP Credit Facility shall be due on or before the earlier of: January 31, 2020, or confirmation of a Plan of Reorganization in the Debtor's Chapter 11 Case, unless terminated earlier pursuant to a "DIP Credit Facility Termination Event" as follows: (i) appointment of a Chapter 11 Trustee in the Chapter 11 Case; (ii) dismissal of the Chapter 11 Case; (iii) sale of substantially all of the Debtor's assets; or (iv) conversion of the Chapter 11 Case to one under Chapter 7 of the Bankruptcy Code. |
| **Loan Documents:** | Borrower shall execute and deliver, and cause to be executed and delivered to each Lender a Promissory Note, Mortgage and such other documents as are reasonable and customary for similar loans. |
| **Fees and Expenses:** | Upon closing of the DIP Credit Facility, Borrower will pay Lender's reasonable fees and expenses. |
| **Governing Law:** | State of Hawaii |
| **Events of Default:** | Customary defaults including, (a) failure to pay principal, interest, fees and expenses when due; (b) violation of covenants; (c) change of control; (d) dismissal or conversion of the Chapter 11 Case; (e) appointment of a chapter 11 trustee in the Chapter 11 Case; (f) granting of relief from automatic stay to permit foreclosure on or exercise any other remedies with respect to any property of the Borrower; or (g) the plan of reorganization shall not have been approved by the Bankruptcy Court by January 31, 2020. |
| **Representations and Warranties:** | Customary representations and warranties including, those mentioned in this Term Sheet and the following: (a) organization, qualification and due authorization of the Borrower; (b) no undisclosed litigation; (c) no breach of laws or regulations; (d) all necessary third party consents have been obtained. |

# EXHIBIT B

| | Sept | Oct | Nov | Dec |
|---|---|---|---|---|
| **Beginning Cash** | $ 30,000.00 | $ (9,972.49) | $ (10,198.00) | $ (69.86) |
| | | | | |
| **Cash Inflow** | | | | |
| Customers | $ - | $ - | $ 75,000 | $ - |
| DIP Financing | $ 400,000 | $ 400,000 | $ 400,000 | $ 300,000 |
| **Subtotal Cash and Income** | $ 430,000 | $ 390,028 | $ 464,802 | $ 299,930 |
| | | | | |
| **Cash Outflow** | | | | |
| Payroll | $ 143,105 | $ 93,311 | $ 105,811 | $ 105,811 |
| Product Inventory | $ 145,606 | $ 100,000 | $ 150,000 | $ 50,000 |
| Software COGS | $ 14,319 | $ 12,548 | $ 11,094 | $ 11,094 |
| Product Development | $ 72,575 | $ 47,628 | $ 57,920 | $ 75,000 |
| Field Issue Retrofit | $ 22,500 | $ 25,000 | $ 5,000 | $ 5,000 |
| Marketing | $ 20,000 | $ 44,000 | $ 25,280 | $ 20,910 |
| Sales support contractors | $ 5,000 | $ 10,000 | $ 10,000 | $ 10,000 |
| Backoffice (Rent/Utilies) | $ 8,703 | $ 6,703 | $ 8,703 | $ 6,703 |
| Legal Services | $ - | $ 25,000 | $ 25,000 | $ 25,000 |
| Buffer | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 |
| Loans | $ 3,164 | $ 3,164 | $ 3,164 | $ 3,164 |
| US Trustees | | $ 4,875 | $ - | $ - |
| Cure payments | $ - | $ 22,996.00 | $ 57,899 | |
| **Expenses** | $ 439,972 | $ 400,226 | $ 464,872 | $ 317,683 |
| | | | | |
| **Ending Cash** | $ (9,972) | $ (10,198) | $ (70) | $ (17,753) |

# EXHIBIT C



Choi & Ito Attorneys at Law
Main Office
700 Bishop St Ste 1107
Honolulu, HI 96813


Attention:   Allison Ito


# FINANCING STATEMENT AND LIEN REPORT

Maximum liability limited to
$3,500.00

We have made a search of the Indexes at the Bureau of Conveyances of the State of Hawaii and certify that the following is a list of: (1) all liens recorded in said Indexes; and (2) all U.C.C. financing statements and assignments thereof which have been recorded or for which a valid continuation statement has been recorded in said Indexes within the period beginning five (5) years and six (6) months prior to the date of this report and ending on the date of this report; against:

IBIS NETWORKS, INC.

Lien(s) - NONE

Financing Statement(s) – NONE


-Note:-        No search has been made for, and this report does not cover: (1)  any mortgages of real property or Homeowners and/or Association Liens, (2) any financing statements incorporated in a mortgage; and (3) any financing statements or other instruments affecting the same which may have been recorded or registered in the filing office of another state or country.


This report is dated August 15, 2019 at 8:00 a.m.

Inquiries concerning this report should be directed to
RTS Customer Service
RTSCustomerService@tghawaii.com
Fax (808)-521-0278
Telephone (808)-533-5874
Refer to Order No. 201943456

Title and Escrow is our business.  Hawaii is our home.

Title Guaranty of Hawaii, LLC

235 Queen Street, Honolulu, Hawaii 96813 | www.TGHawaii.com | Phone: (808)-533-6261 | Fax: (808)-521-0210

U.S. Bankruptcy Court - Hawaii   #19-01083   Dkt # 7   Filed  08/27/19   Page 25 of 29

# EXHIBIT D



# Delaware

## The First State

CERTIFICATE

SEARCHED AUGUST 26, 2019 AT 3:07 P.M.
FOR DEBTOR, IBIS NETWORKS, INC.

1 OF 1          FINANCING STATEMENT                    20161994365

            EXPIRATION DATE: 04/04/2021
DEBTOR:      IBIS NETWORKS, INC.

            828 FORT STREET MALL, SUITE 600      ADDED     04-04-16

            HONOLULU, HI US 96813

SECURED:     BANK OF HAWAII

            P.O.BOX 2715                         ADDED     04-04-16

            HONOLULU, HI US 96803


**F I L I N G   H I S T O R Y**

    20161994365    FILED 04-04-16    AT 9:27 P.M.    FINANCING STATEMENT


**E N D   O F   F I L I N G   H I S T O R Y**

    THE UNDERSIGNED FILING OFFICER HEREBY CERTIFIES THAT THE ABOVE
LISTING IS A RECORD OF ALL PRESENTLY EFFECTIVE FINANCING STATEMENTS,
FEDERAL TAX LIENS AND UTILITY SECURITY INSTRUMENTS FILED IN THIS
OFFICE WHICH NAME THE ABOVE DEBTOR, IBIS NETWORKS, INC. AS OF AUGUST
19, 2019 AT 11:59 P.M.



Jeffrey W. Bullock, Secretary of State

U.S. Bankruptcy Court - Hawaii  #19-01083   Dkt # 7   Filed  08/27/19   Page 27 of 29

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
GISELLA MELENDEZ 800-331-3282

**B. E-MAIL CONTACT AT FILER (optional)**
EFILING@WOLTERSKLUWER.COM

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)
P.O. BOX 29071
GLENDALE, CA 91209-9071
US

Delaware Department of State
U.C.C. Filing Section
Filed: 09:27 PM 04/04/2016
U.C.C. Initial Filing No: 2016 1994365

Service Request No:  20162067706

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| IBIS NETWORKS, INC. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 828 FORT STREET MALL, SUITE 600 | HONOLULU | HI | 96813 | US |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| BANK OF HAWAII | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| P.O.BOX 2715 | HONOLULU | HI | 96803 | US |

**4. COLLATERAL:** This financing statement covers the following collateral:
All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all intellectual property, copyrights, trademarks, tradenames and patents, all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (in

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

**6b.** Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
DE-0-53263054-51349034

U.S. Bankruptcy Court - Hawaii  #19-01083  Dkt # 131 Filed 08/27/19  Page 42 of 43
International Association of Commercial Administrators

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# UCC FINANCING STATEMENT ADDENDUM

**FOLLOW INSTRUCTIONS**

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| | |
|---|---|
| **OR** | 9a. ORGANIZATION'S NAME |
| | 9b. INDIVIDUAL'S SURNAME |
| | FIRST PERSONAL NAME |
| | ADDITIONAL NAME(S)/INITIAL(S)     SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**10. DEBTOR'S NAME:** Provide (10a or 10b) only <u>one</u> additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| | |
|---|---|
| **OR** | 10a. ORGANIZATION'S NAME |
| | 10b. INDIVIDUAL'S SURNAME |
| | INDIVIDUAL'S FIRST PERSONAL NAME |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)     SUFFIX |

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**11.** ☐ **ADDITIONAL SECURED PARTY'S NAME** or ☐ **ASSIGNOR SECURED PARTY'S NAME:** Provide only <u>one</u> name (11a or 11b)

| | |
|---|---|
| **OR** | 11a. ORGANIZATION'S NAME |

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral)**
**limited to all insurance payments) of or relating to the foregoing property.**

**13.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

**14.** This FINANCING STATEMENT: ☐ covers timber to be cut ☐ covers as-extracted collateral ☐ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

**16.** Description of real estate:

**17. MISCELLANEOUS:**

U.S. Bankruptcy Court - Hawaii   #19-01083   Dkt #   International Association of Commercial Administrator

**FILING OFFICE COPY** — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)